[No. 21435–7–I. Division One. July 31, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. TYRONE BRIGGS, *Appellant.*

*David Allen, Richard Hansen, Donald Roistacher,* and *Allen & Hansen,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Mark Larson, Deputy,* for respondent.

[As amended by order of the Court of Appeals August 14, 1989.]

COLEMAN, C.J.—Tyrone Briggs appeals from his conviction for multiple counts of robbery, attempted robbery, assault, and attempted rape. A deadly weapon allegation accompanied each count. Briggs alleges that he did not receive a fair trial because of juror misconduct. We agree and reverse and remand for a new trial. Briggs raises additional issues that we address in this opinion only insofar as they are likely to arise on retrial.

The charges against Briggs arose from a series of attacks on five women that occurred near Harborview Hospital and Seattle University between November 28 and December 18, 1986. The prosecution's case rested primarily on eyewitness identification of Briggs by the victims and others who witnessed the assaults. The principal defense theory was that none of the victims ever noted that their attacker spoke with a stutter and that Briggs has a profound stutter.

Briggs' first trial ended in a mistrial on May 12, 1987, when the jury was unable to reach a verdict. His second trial resulted in conviction on August 17, 1987.

After the verdict in the second trial, Briggs' counsel learned that one of the jurors had related in deliberations how he once had a speech production problem that only occurred in certain circumstances and was amenable to control. The court granted the defense motion for a mistrial on the grounds that the juror withheld information on voir dire concerning his speech disorder and that his comments amounted to an impermissible introduction of evidence into the jury's considerations. The court, however, reversed itself on November 19, 1987, and reinstated the verdict after hearing argument on the State's motion for reconsideration.

We first review appellant's argument that juror misconduct entitles him to a new trial.

During voir dire, appellant's counsel asked the panel that included juror Carroll White the following question: "Is there anyone in the panel who has any past experience, study or contact with stuttering or speech problems in general?" White did not respond to the question. After the verdict, the defense learned in the course of juror interviews that juror White had a history of a speech production disorder.[1] White signed a statement prepared by a defense investigator that provided, in part: "I have had a problem with hesitation in my speech that I believe is like a stutter. When with peers or authority or acquaintances[,] I have long known that I have this hesitating speech impediment."

---

[1]Several venire members responded in voir dire that they had some experience with speech disorders. Appellant's counsel pursued those responses with questions about their knowledge and experience with the subject. *See, e.g.,* Report of Proceedings (July 27, 1987) at 14, 22–23, 24–25, 31. No venire member answering affirmatively to the initial question was challenged peremptorily or removed for cause by the defense, Report of Proceedings (July 27, 1987) at 14, 22–23, 31, 94–95, 101–03, 133, 135, 137–40. These venire members did, however, agree under oath to set aside any independent knowledge or opinions about stuttering and to decide the case only on the evidence presented. *See, e.g.,* Report of Proceedings (July 27, 1987) at 82, 87–88, 135–40.

White also characterized his problem as a "stutter–like hesitation" and as a "speech problem." White admitted discussing his speech problem during deliberations to help the jury understand certain evidence regarding appellant's stutter.

> I offered this personal experience to the jury as an aid to understanding evidence of the stuttering issue. The stuttering issue was reduced in value to no reasonable doubt. My experience as a person with this speech problem pointed out to the jury's conclusion that Tyrone did not always stutter.

Two other jurors, Helen Klatt and Eleanor Smith, signed similar statements corroborating White's admissions. Klatt's statement provided, in part:

> 3. One member of the jury, Carroll White, spoke about his personal experience as a stutterer. White told us that he stuttered often and he was unaware of his stuttering until someone would point it out to him. He also explained that under certain circumstances he would be able to control his stuttering.
>
> 4. Carroll White introduced this subject and his personal experience as a stutterer to the jury in order to explain how Tyrone Briggs might be unaware of his stuttering and how someone like Tyrone might be able to commit the crimes without stuttering.

The trial court conducted a posttrial hearing on the issue of juror misconduct. The court reviewed the jurors' statements and heard testimony from juror White. White testified that he did not divulge his speech problem in voir dire because he regards it as a hesitancy or pausing between words and not a stutter, which he defines as an inability to form proper sounds. White testified that he is not, and does not know, a stutterer. White did, however, again admit discussing his speech problem during deliberations:

> THE COURT: But you did talk about your personal experience with a speech problem?
>
> THE WITNESS: With a speech problem, yes.
>
> THE COURT: Whether you call it stuttering or whether you call it pausing or some other type of speech problem, you did discuss your personal experience with a speech problem with the other jurors?
>
> THE WITNESS: Yes, I did.

Based upon this evidence, the trial court made the following findings regarding White's failure to disclose the speech

problem and his discussion of that problem during jury deliberations:

> First, that Mr. White did not answer the question that he had a speech problem when so asked on voir dire as a general question. That this failure to answer that he had knowledge of speech problem or experience with a speech problem deprived the defense of an opportunity to inquire further as to any potential bias he may have on that subject.
>
> Secondly, that stuttering and speech problems were material to this case, in fact, central. The State called an expert witness, a speech pathologist. I think that in and of itself is evidence of the centrality and materiality of this issue to the case.
>
> Third, Mr. White discussed with the jury his personal experience with speech problems, including how he could overcome his speech problem and that Briggs might have used the same techniques.
>
> Four, although Mr. White denies he is a stutterer, he signed a statement that states, "I have a problem with hesitation in my speech that I believe is like a stutter."
>
> Even if we eliminated the word stutter and only talked about a speech problem, it would not materially affect the decision the Court is making today [to grant a new trial]. His discussion of his speech problems in the jury room, whether you characterize them as hesitation, whether you characterize them as slowness, or whether you characterize them as stuttering, was impermissible testimony, if you will, to the jury that did not come from the witness stand.
>
> Three other jurors identified Mr. White as talking about his experience as a stutterer, and that is the word that was used in affidavits which were apparently prepared by the investigator for the defendant. Even if that was changed from stutterer to speech problem, or something less than stutterer, it is clear and Mr. White acknowledged that that was his only quarrel with what those jurors had to say about his discussions, that he clearly discussed his speech problems and what he did to overcome them with the other jurors, bringing before the jury his personal experience and his speech problem and the methods of overcoming them allowed impermissible evidence other than from the proceedings properly brought before the jury.
>
> The Court makes no findings that Mr. White acted with an intent to deceive on voir dire.

The court ordered a new trial. At a later hearing the court explained that it had decided appellant was entitled to a new trial because "the combination of [White's] failure to disclose and his discussions during deliberation required a finding of misconduct even though juror White did not

act intentionally." In arriving at this decision, the court relied upon *Smith v. Kent,* 11 Wn. App. 439, 523 P.2d 446 (1974). The *Kent* case held that a party is entitled to a new trial if juror misconduct deprived the party of the opportunity to exercise a challenge:

> That misconduct may consist of a prospective juror's false answer to a material question that either (1) conceals or misrepresents his bias or prejudice, or (2) prevents the intelligent exercise by a litigant of his right to exercise a peremptory challenge[2] or his right to challenge a juror for cause.

*Kent,* at 443. The *Kent* rule applied to material omissions as well as to material misrepresentations.

> It is jury misconduct warranting a new trial for a juror to give a false answer on a material matter during voir dire examination that conceals information properly requested by a litigant to enable him to determine whether or not to excuse the prospective juror . . .

*Kent,* at 444.

On November 18, 1987, however, after applying the standard of juror misconduct set forth in *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 78 L. Ed. 2d 663, 104 S. Ct. 845 (1984), the court granted the State's motion to reconsider, vacated the order granting a new trial, and reinstated the verdict. *McDonough* holds that

> to obtain a new trial in such a situation [material nondisclosure on voir dire], a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause.

*McDonough,* 464 U.S. at 556. The trial court concluded that it should apply the *McDonough* rule, which is considerably more restrictive than is the *Kent* rule in determining if a new trial is required for a juror's material nondisclosure on voir dire, reasoning that there is "no persuasive reason why the courts of Washington would not follow the standard on nondisclosure announced by the Supreme Court in

---

[2]No peremptory challenge was available to the appellant at the time juror White was seated, and thus appellant's right to exercise a peremptory challenge was not impaired by juror White's material nondisclosure.

*McDonough.*" Applying *McDonough,* the trial court determined that juror White's speech problem, had it been disclosed, would not have entitled appellant to a challenge for cause. The court also determined that White's discussion of his speech disorder during deliberations, did not, in and of itself, require a new trial because the State had demonstrated that White's comments were not prejudicial.

In our view, *McDonough* is not dispositive of the issue that confronted the trial court in this case. *McDonough* only concerns whether a party is automatically entitled to a new trial on a showing that a juror failed to disclose material information on voir dire. The instant case not only involves nondisclosure of material information, but it also involves the juror discussing during deliberations the undisclosed information in an effort to assist the jury in resolving the central issue of the case.

*McDonough* is a products liability case in which the plaintiff sought to recover damages incurred when a child's feet were amputated by a riding lawn mower. The jury was asked whether any member of a juror's family had ever sustained a severe injury resulting in disability or prolonged pain and suffering, and a juror failed to reveal that his son had broken a leg when a truck tire exploded. *McDonough,* 464 U.S. at 550–51. There was no showing in *McDonough* that the offending juror committed any misconduct during deliberations involving the withheld information. The only prejudice shown by the appellant in that case was the denial of the opportunity to exercise a peremptory challenge.

The use of peremptory challenges does not involve a constitutional right. *State v. Kender,* 21 Wn. App. 622, 626, 587 P.2d 551 (1978), *review denied,* 91 Wn.2d 1017 (1979). Peremptory challenges allow a party to exclude jurors whom a party, for one reason or another not rising to the level of bias, would like to exclude. *See Kent,* at 443. Challenges for cause allow a party to exclude any juror who cannot be impartial. *See* RCW 4.44.170. The deprivation of

a peremptory challenge, unlike the deprivation of a challenge for cause, does not necessarily impair a party's ability to exclude an impartial juror. Accordingly, the *McDonough* Court held that a juror's failure to disclose a material fact alone is a nonprejudicial error not affecting the essential fairness of a trial and does not entitle a party to a new trial unless a truthful response by the juror would have provided the basis for a challenge for cause or it otherwise denied a party a fair trial. *McDonough*, 464 U.S. at 556.

*McDonough* was followed by this court in *State v. Rempel*, 53 Wn. App. 799, 803, 770 P.2d 1058 (1989). In the *Rempel* case, a juror denied during voir dire knowing the complaining witness in a burglary and rape prosecution. When the victim appeared in court to testify, however, the juror realized that she indeed knew the victim from having previously worked with her. The juror immediately informed the court of their acquaintance, and a hearing was held to determine whether the juror's nondisclosure required a mistrial. *Rempel*, like *McDonough*, rejects the idea that a party is entitled to a new trial merely because the opportunity to exercise a peremptory challenge is lost because of a juror's material nondisclosure. *State v. Rempel, supra; see also McDonough*, 464 U.S. at 556.

The facts of the instant case, however, significantly differ from those in *McDonough* and *Rempel*. This is not just a case of a juror's material nondisclosure. The nondisclosure is also inseparably involved with the juror's discussion of the undisclosed information during the jury's deliberations. Thus, while the undisclosed information alone probably would not have entitled appellant to challenge the juror for cause, or, consequently, to receive a new trial under *McDonough*, the nondisclosure, coupled with the later misconduct in deliberations amounts to actual prejudice entitling appellant to a new trial.

■ Under *McDonough* and *Rempel*, the relevant inquiry essentially ended when it was determined that the juror's material nondisclosure would not have provided the basis for a challenge for cause and there were no additional facts

showing prejudice. *See McDonough,* 464 U.S. at 556; *Rempel,* at 804. But where the record demonstrates that the undisclosed information is later employed in the jury's deliberations, additional analysis is required. *See Smith v. Kent,* 11 Wn. App. 439, 448–49, 523 P.2d 446 (1974); *accord, United States v. Perkins,* 748 F.2d 1519, 1533 (11th Cir. 1984). When a juror withholds material information during voir dire and then later injects that information into deliberations, the court must inquire into the prejudicial effect of the combined, as well as the individual, aspects of the juror's misconduct. *See Kent,* at 448–49; *Perkins,* at 1532–34.

The *Kent* case stands for the proposition that this kind of misconduct is prejudicial. The plaintiff in *Kent* was injured when a dump truck traveling ahead of her automobile threw a large rock through her windshield. The plaintiff's theory was that the rock came from the defendant's truck and, thus, the defendant's negligence was responsible for the injury. The defense theory was that the rock was picked up from the roadway and thrown by the truck's rear wheels and, thus, the injury was an unforeseeable accident. During voir dire, one of the jurors failed to disclose a history of driving heavy equipment trucks. *Kent,* at 441. During deliberations, however, the nondisclosing juror argued that his experiences as a truck driver confirmed the defense's theory of the accident. *Kent,* at 449.

The *Kent* court's holding that a new trial is required when a juror's material nondisclosure deprives the plaintiff of the opportunity to intelligently exercise a challenge has been limited and redefined by *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 78 L. Ed. 2d 663, 104 S. Ct. 845 (1984), and *Rempel* to require a new trial only if the withheld information would have provided a challenge for cause. *Kent* nonetheless retains vitality.

The *Rempel* court left standing the alternative holding in *Kent. Rempel,* at 802–03. The *Kent* court was not required to reach the question of the actual prejudicial effect of the juror's misconduct once it had decided sufficient prejudice

accrued from the denial of the peremptory challenge; nonetheless, it did so in passing. *Kent,* at 449. The *Kent* court held that the offending juror's conduct established actual prejudice. *Kent,* at 449. In that case, the juror's comments about how the rock might have been picked up by the truck tires related directly to the central issue in the case and were based on the juror's experience that he had failed to disclose on voir dire. In the *Rempel* case, the court refused to grant a new trial specifically because such evidence of prejudice was lacking. *Rempel,* at 803.

Our analysis of the record in the instant case establishes that juror White committed two closely related acts of misconduct—material nondisclosure[3] during voir dire and the use of the undisclosed information during jury deliberations. This misconduct translated into two closely related types of prejudice: (1) appellant was denied the opportunity to detect, and to prevent from being used during deliberations, juror White's prior experience with, and opinions about, speech disorders; and (2) appellant was prejudiced by having the undisclosed information interjected into the jury's deliberations.

▇ As to the first type of prejudice, it is important to note that

> *Voir dire* examination serves to protect [the right to an impartial jury] by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on *voir dire* may result in a juror's being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.

*McDonough,* 464 U.S. at 554. Had juror White responded truthfully to the relevant voir dire question in this case,

---

[3]It is indisputable that juror White's failure to disclose his speech problem was material. The trial court so found when granting the motion for a new trial and reiterated that finding when rendering its decision not to grant a new trial. That finding has not been challenged by the parties and is a verity on this appeal. *Lassila v. Wenatchee,* 89 Wn.2d 804, 809, 576 P.2d 54 (1978).

appellant could have pursued the matter to determine whether the juror should be excused for cause. Certainly he would have been asked, as were the other jurors who revealed in voir dire their prior experiences with speech disorders, if he would be able to refrain from doing precisely what he did in this case—discussing his unique personal experience in deliberations. If he had answered no, he would not set aside his personal experience with a speech disorder, but would use it to reinforce the expert testimony and to rebut the defense witnesses who claimed appellant always stuttered, he undoubtedly would have been excused for cause.

What juror White did in this case by introducing the withheld information into deliberations was precisely what voir dire is intended to avoid, by either exposing an inability to set aside personal considerations or by getting the juror to commit, under oath, not to do so. Accordingly, appellant was prejudicially denied the protection voir dire offers to preserve jury impartiality, which is "'a jury capable and willing to decide the case solely on the evidence before it.'" *McDonough*, 464 U.S. at 554 (quoting *Smith v. Phillips*, 455 U.S. 209, 217, 71 L. Ed. 2d 78, 102 S. Ct. 940 (1982)).

■ Moreover, appellant was also prejudiced by juror White's use of the undisclosed information during jury deliberations. Juror misconduct involving the use of extraneous evidence during deliberations will entitle a defendant to a new trial if there are reasonable grounds to believe the defendant has been prejudiced. *State v. Lemieux*, 75 Wn.2d 89, 91, 448 P.2d 943 (1968). Any doubt that the misconduct affected the verdict must be resolved against the verdict. *Halverson v. Anderson*, 82 Wn.2d 746, 752, 513 P.2d 827 (1973). This is an objective inquiry into whether the extraneous evidence could have affected the jury's determinations and not a subjective inquiry into the actual effect of the evidence on the jury because the actual effect of the evidence inheres in the verdict. *Gardner v. Malone*, 60 Wn.2d 836, 841, 376 P.2d 651, 379 P.2d 918 (1962). This

inquiry necessarily involves consideration of the purpose for which the extraneous evidence was interjected into the jury's deliberations. "[A] new trial must be granted unless 'it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict.'" *United States v. Bagley,* 641 F.2d 1235, 1242 (9th Cir. 1981) (quoting *Gibson v. Clanon,* 633 F.2d 851, 855 (9th Cir. 1980)); *see also United States v. Bagnariol,* 665 F.2d 877, 887 n.6 (9th Cir. 1981); *Llewellyn v. Stynchcombe,* 609 F.2d 194, 195 (5th Cir. 1980) ("a defendant is entitled to a new trial unless there is no reasonable possibility that the jury's verdict was influenced by the material that improperly came before it.")

Other courts in similar circumstances have found such comments to be unavoidably prejudicial. *See, e.g., Haley v. Blue Ridge Transfer Co.,* 802 F.2d 1532, 1538 (4th Cir. 1986). In *Haley,* a venire member was erroneously placed on a jury without being subject to voir dire. The case involved whether a trucking company treated its truckers fairly, and this "nonjuror", during deliberations, said he knew from experience that trucking companies treat truckers badly and that he would not believe what the trucking company had to say. The *Haley* court found that there was a reasonable possibility these comments were prejudicial. *Haley,* at 1534, 1538. Similarly, in this case the juror interjected his personal experience into deliberations on the central issue being tried. His comment, while less direct than that in *Haley* concerning the company's credibility, rebutted the credibility of those witnesses who said appellant always stutters. *See also United States v. Perkins,* 748 F.2d 1519, 1534 (11th Cir. 1984) (there was an obvious likelihood of prejudice where during voir dire a juror denied knowing the defendant, but then argued for the defendant's conviction during deliberations while indicating his acquaintance with the defendant); *Arthur v. Washington Iron Works Div. of Formac Int'l, Inc.,* 22 Wn. App. 61, 68, 587 P.2d 626 (1978) (juror's introduction of extraneous evidence regarding the credibility of the parties' experts was

prejudicial where the jury's resolution of the dispute turned on those credibility determinations).

We hold that juror White's use of the very information he failed to disclose in voir dire during deliberations prejudiced appellant. The misconduct in this case is indistinguishable from the misconduct in the *Kent* case, which was found to constitute actual prejudice. *Kent,* at 449.

The trial court, however, when deciding not to grant a new trial despite this misconduct, determined that the State had rebutted the existence of any prejudicial effect resulting from juror White's actions. The court explained that there were four reasons why juror White's comments during deliberations were not prejudicial: (1) the comments were redundant or cumulative in light of similar testimony by experts at trial; (2) the comments involved the use of the kind of life experience that jurors are expected to use; (3) the comments did not reveal any fact about the appellant; and finally (4) the comments were rendered harmless by the foreperson's repeated admonitions to the jurors to base their decision on evidence adduced at trial and not on personal experience. Relevant case law, however, does not establish that these reasons rebut the existence of prejudice in this instance.

As to the first reason, the court, in finding that the existence of testimony in the record substantially equivalent to juror White's extraneous comments rendered those comments harmless, relied on *Sher v. Stoughton,* 666 F.2d 791 (2d Cir. 1981). In that case an unknown person phoned five jurors in a murder prosecution and told them, among other things, that the defendant had a criminal record and that he had committed the murder. The comments were harmless, however, in light of the fact that they were cumulative and involved undisputed facts—the defendant's record was already before the jury, having been introduced in support of his insanity defense, which was not premised on a denial of having committed the murder. *Sher,* at 794–95.

The crucial distinction between the harmless cumulative comments in *Sher* and the cumulative comments in

the instant case is the fact that juror White's comments involved the central issue of the case, which was sharply disputed. The substance of White's comments about his history and knowledge of speech disorders was probably duplicative in light of expert testimony adduced at trial on the subject of stuttering and the testimony of other witnesses as to whether the appellant always stutters. The jurors' signed statements and the testimony of juror White establish that White's comments did, however, pertain to the weight to be given to the trial testimony by the speech expert and the sharply differing witnesses on the central question as to whether appellant always stutters.[4] Cumulative or not, these comments were presented to the jury for the purpose of weighing the value of similar testimony properly introduced at trial and might reasonably have influenced the jury's verdict. *Stynchcombe,* 609 F.2d at 195. The comments were therefore prejudicial. *See Perkins,* 748 F.2d at 1553; *Halverson v. Anderson,* 82 Wn.2d 746, 748, 513 P.2d 827 (1973).

The court's second reason as to why the juror's comments did not have a prejudicial effect was that the comments involved the kind of life experiences jurors are expected to bring to bear in deliberations. While a jury, in exercising its collective wisdom, is expected to bring its opinions, insights, common sense, and everyday life experience into deliberations, *see United States v. Howard,* 506 F.2d 865, 867 (5th Cir. 1975), the information related by juror White was of a different character. It was highly specialized, as evidenced by the fact that the topic was the subject of expert testimony by a prosecution witness. Juror White's

---

[4]Juror White's stated purpose for offering "this personal experience to the jury [was] as an aid to understanding evidence of the stuttering issue." That the other jurors could have reasonably understood juror White's comments to reinforce the speech expert and to rebut the testimony of witnesses who claimed that appellant always stuttered is apparent from juror Helen Klatt's statement: "Carroll White introduced this subject and his personal experience as a stutterer to the jury in order to explain how Tyrone Briggs might be unaware of his stuttering and how someone like Tyrone might be able to commit the crimes without stuttering."

comments were used to elaborate upon and clarify the expert testimony by explaining how appellant might have controlled his stuttering in certain instances, despite the existence of testimony that he always stutters.

This is evidence outside the realm of a typical juror's general life experience and therefore should not have been introduced into the jury's deliberations. *Halverson,* at 752 (new trial ordered where juror misconduct consisted of telling fellow jurors the salaries of airline pilots and surveyors in an action wherein the plaintiff sought lost wages and had shown an inclination to enter those professions but had failed to introduce evidence regarding salaries in those professions); *see also Fritsch v. J.J. Newberry's, Inc.,* 43 Wn. App. 904, 907, 720 P.2d 845 (1986) (juror's extraneous remarks regarding the value of damages was in the nature of expert testimony that should have been subject to cross examination and was thus prejudicial). Similarly, appellant was prejudiced by juror White's use of his particular knowledge about this crucial issue during the jury's deliberations.

The court's third reason as to why the juror's extraneous remarks were not prejudicial was that they did not reveal a fact about the appellant. While the cases do speak of the importance of the jury not considering "specific facts about the specific defendant then on trial" not introduced by testimony in the courtroom, *United States v. McKinney,* 429 F.2d 1019, 1023 (5th Cir. 1970), that is not to say it is permissible for the jury to consider any other extraneous facts as long as they are not facts about the defendant. *See State v. Rinkes,* 70 Wn.2d 854, 862, 425 P.2d 658 (1967) (impermissible for jury to consider newspaper editorial and cartoon about liberal court decisions in deliberations on criminal prosecution). Accordingly, just because juror White's comments were not about appellant does not establish that they had no prejudicial effect.

Finally, the court's fourth reason why the juror's comments did not have a prejudicial effect was that the foreperson's admonitions rendered the extraneous evidence

harmless. While the jury is presumed to follow instructions and admonishments, *United States v. Bagnariol,* 665 F.2d 877, 889 (9th Cir. 1981); *State v. Trickel,* 16 Wn. App. 18, 28, 553 P.2d 139 (1976), if the extraneous evidence is sufficiently prejudicial, a new trial must be ordered despite admonitions to the jury. *United States v. Heller,* 785 F.2d 1524, 1526–28 (11th Cir. 1986) (court became aware of jurors' prejudicial comments and ordered a new trial even though a hearing was conducted and jurors individually assured the court they could set aside consideration of the prejudicial remarks); *United States v. Vasquez,* 597 F.2d 192, 193 (9th Cir. 1979) (court's file containing prejudicial material was inadvertently sent with jury into deliberations and reviewed by several jurors; although the jurors denied having been influenced by the material, the relevant inquiry is whether the materials could have influenced their decision); *cf. Bagnariol,* at 889 (admonition from court can ameliorate the effect of prejudice); *Lockwood v. AC&S, Inc.,* 109 Wn.2d 235, 265, 744 P.2d 605 (1987) (court's curative instruction can significantly reduce the probability that misconduct had a prejudicial effect). The fact that the foreperson in this case felt compelled to make these repeated admonishments is itself objective evidence that she recognized the impropriety and potential prejudice of juror White's remarks. Due to the nature of juror White's comments and their pertinence to the central dispute in this trial, it is not possible to say that the admonitions to the jury left no reasonable possibility that the comments could have influenced the verdict. *See Llewellyn v. Stynchcombe,* 609 F.2d 194, 195 (5th Cir. 1980).

■ While great deference is due the trial court's determination that no prejudice occurred, greater deference is owed a decision to grant a new trial than a decision not to grant a new trial. *State v. Cummings,* 31 Wn. App. 427, 430, 642 P.2d 415 (1982). A trial court abuses its discretion when its decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775

(1971). Juror White's material nondisclosure, coupled with his later discussion of the undisclosed information during deliberations, was not harmless beyond a reasonable doubt and could have affected the jury's verdict. Appellant was prejudiced by juror White's misconduct because it deprived him of an impartial jury and, therefore, of a fair trial. Accordingly, there was no tenable basis for the trial court's refusal to grant appellant a new trial based on juror White's misconduct.

We next address whether the trial court erred by permitting expert testimony on the subject of stuttering. Appellant argues that it was error for the trial court to deny his motion in limine to limit expert testimony on the subject of stuttering. Appellant wanted the trial court to exclude Dr. Selmar's anecdotal reference to public personalities who have a stuttering problem and his "speculation" as to whether appellant would have stuttered under circumstances such as those under which the charged crimes were committed.

Questions regarding the admissibility of expert testimony are invested in the sound discretion of the trial court. *State v. Smissaert*, 41 Wn. App. 813, 814, 706 P.2d 647, *review denied*, 104 Wn.2d 1026 (1985). That discretion is guided by ER 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The admissibility of expert testimony under this rule depends upon whether (1) the witness qualifies as an expert, (2) the opinion is based upon an explanatory theory generally accepted in the scientific community, and (3) the expert testimony would be helpful to the trier of fact. *State v. Canaday*, 90 Wn.2d 808, 585 P.2d 1185 (1978). *See generally* 5A K. Tegland, Wash. Prac., *Evidence* § 288, at 25 (2d ed. 1982).

*State v. Allery*, 101 Wn.2d 591, 596, 682 P.2d 312 (1984) (quoting ER 702).

■ Appellant complains that it was error to allow Dr. Selmar to compare appellant, whom he had not treated or

examined, with public personalities who stutter and whom the expert also did not know. Appellant argues that such testimony, particularly that which indicates those personalities did not stutter in all circumstances, is inadmissible under *State v. Black*, 109 Wn.2d 336, 745 P.2d 12 (1987). *Black* prohibits the use of symptoms common to rape victims, the "rape victim syndrome," in an attempt to prove that a rape occurred. The court held such evidence inadmissible because the relevant scientific literature establishes that there is no "typical" response to rape. *Black*, at 343. *Black* is inapposite to Dr. Selmar's testimony. Dr. Selmar was not attempting to establish that an underlying event, such as a rape, can be inferred from the existence of some overlying symptom, such as "rape victim syndrome." One of the crucial issues in this case was whether stutterers always stutter, and the use of well–known personalities who stutter to illustrate that point would obviously be useful to the jury. The trial court did not abuse its discretion by permitting the testimony.

■ Similarly, the trial court did not err by permitting Dr. Selmar to testify that there were situations in which there was a high probability that a person would not stutter, including the statistical percentage of that probability. Appellant cites *People v. Collins*, 68 Cal. 2d 319, 438 P.2d 33, 66 Cal. Rptr. 497 (1968), and *United States v. Massey*, 594 F.2d 676 (8th Cir. 1979), for the proposition that experts cannot testify as to statistical probabilities. Neither case is so broad. In *Collins*, the testimony lacked foundation and was used to assess the statistical likelihood of the defendant's guilt. *Collins*, 438 P.2d at 41. In *Massey*, the very high statistical probability that various hairs in evidence came from the same individual was equated in the prosecutor's closing argument to the probability that the defendant was guilty. *Massey*, at 681. No such misuse of statistics occurred in the testimony of Dr. Selmar, which concerned certain facts about stuttering and not the statistical likelihood that appellant was the attacker. There is no

prohibition against using well–founded statistics to establish some fact that will be useful to the trier of fact. *Collins,* 438 P.2d at 41. It was obviously useful for the jury to hear Dr. Selmar's testimony on the subject of whether people always stutter and under which circumstances stutterers usually do not stutter. The trial court did not err by permitting this testimony.

■ We next address whether the trial court erred by excluding expert testimony on the issue of the reliability of eyewitness identifications. Appellant argues it was an abuse of discretion for the court to exclude the testimony of Dr. Elizabeth Loftus on the reliability of eyewitness identifications. Expert testimony on the issue of the reliability of eyewitness identifications has been the subject of several appellate court opinions. The court in *State v. Moon,* 45 Wn. App. 692, 726 P.2d 1263 (1986) announced the standard under which a trial court's decision to exclude such testimony will be scrutinized. The decision to exclude such testimony

> is an abuse of discretion in a very narrow range of cases: (1) where the identification of the defendant is the principal issue at trial; (2) the defendant presents an alibi defense; and (3) there is little or no other evidence linking the defendant to the crime.

*Moon,* at 697. The court in *State v. Johnson,* 49 Wn. App. 432, 743 P.2d 290 (1987), *review denied,* 110 Wn.2d 1005 (1988) later elaborated upon and refined *Moon,* adding that before an abuse of discretion will be found, the case must also involve a close and confusing fact pattern that cries out for an explanation that the expert testimony would provide. *Johnson,* at 440.

In *Moon,* the trial court excluded expert testimony on the subject of eyewitness identifications because it would invade the province of the jury. Such a ground for exclusion was untenable because an expert may testify as to ultimate issues. *Moon,* at 698. Accordingly, the court abused its discretion by excluding the testimony because the sole evidence tying the defendant to the crime in that case was an

eyewitness identification. In *Johnson,* however, it was not an abuse of discretion to exclude such testimony:

> While in *Moon* there was but a single eyewitness who had only a "brief look" at the robber, here there were four different eyewitnesses who were able to view the robber for much longer periods. Furthermore, there is no significant discrepancy in this case, as there was in *Moon,* between the victims' initial descriptions of the robber and the defendant's actual appearance. Finally, there is nothing comparable in this case to the "complicated background" of [*State v.*] *Chapple,* [135 Ariz. 281, 660 P.2d 1208, 1217–18 (1983),] which included numerous photographic lineups, multiple exposures of the witnesses to the defendant's photograph, and a close resemblance between the defendant and another suspect. *See Chapple,* 660 P.2d at 1217–18; *see also* [*People v.*] *McDonald,* [37 Cal. 3d 351,] 690 P.2d [709,] at 711–15 [208 Cal. Rptr. 236 (1984)]. Therefore, we conclude that this is simply one of the "great majority of cases" where the reasons cited by the trial court correctly permit exclusion of expert testimony on eyewitness identification. *See Chapple,* 660 P.2d at 1220.

(Footnote omitted.) *Johnson,* at 440.

In the instant case, there was a tenable basis for the trial court's decision to exclude the testimony. The court concluded that the case did not cry out for the kind of explanation appellant's eyewitness expert would provide. For one reason, there was "other evidence" linking appellant to the crime:

> [The victim's] purse was found in close proximity of the defendant's home within a short time following the attack.
> There were two jackets which had been identified in a general description, which were located in the defendant's home and which fit the defendant, and the defendant is proposed to be left–handed and several of the individuals identified their attacker as left–handed.

This "other evidence" establishes a tenable basis for the trial court's decision to exclude Dr. Loftus's testimony because its presence means the third *Moon* factor was not present. Moreover, while there were some discrepancies between the eyewitnesses' initial descriptions and appellant, mostly involving whether his hair was in an Afro or had been processed, they were minor. The *Johnson* court noted that unless such discrepancies were significant discrepancies or there were "serious contradictions" in the

eyewitness testimony, it would not be an abuse of discretion to exclude an expert in eyewitness identifications. Here, the trial court found that the victims' descriptions were consistent; each victim having given a "good description" of her attacker and each victim having described "a light–skinned black male of like weight and height to the defendant."

Finally, the *Johnson* court indicated that there is less need to have this kind of expert testimony if the eyewitnesses had clear and ample opportunity to view the defendant. *Johnson,* at 440. In this case, the trial court noted that

> these attacks which are the subject of this case took place in daylight hours, between 8:00 and 10:00 a.m., with varying degrees of daylight, but not in the course of the night. None of which the Court would consider to be fleeting glimpses. In each case the person was confronted by, and in each case spoken to, by their attacker.
> . . . It was close proximity and opportunity to observe each person and in some cases being touched by the attacker.

Accordingly, this record provides a tenable basis for the trial court's conclusion that this case did not cry out for the kind of explanation an expert on eyewitness identifications could provide. *Johnson,* at 440. It was not an abuse of discretion for the trial court to exclude Dr. Loftus's testimony.

We next address whether the trial court erred in limiting the admissibility of evidence of other suspects for the crimes of which appellant is charged. Appellant attempted to introduce evidence of a look–alike suspect, Paul Abram, who had a criminal record, including a purse snatching, and who was stopped by the police during a stakeout in Yesler Terrace in December 1986. Appellant also sought to introduce other look–alike testimony from a victim of an allegedly similar crime, not the basis of charges against appellant, who would testify that appellant was not her attacker. Finally, appellant sought to introduce testimony from witnesses who said they saw someone in the area of the attacks at the time they occurred who looked like appellant, but who was not appellant.

■ The trial court did not abuse its discretion by limiting the testimony regarding Paul Abram.

> Once a proper foundation has been laid, a defendant may introduce evidence that another person committed the crime charged. *State v. Kwan,* 174 Wash. 528, 25 P.2d 104 (1933); *State v. Downs,* 168 Wash. 664, 13 P.2d 1 (1932). In *Downs,* at page 667, the court stated:
>> Before such testimony can be received, there must be such proof of connection with the crime, such a train of facts or circumstances as tend clearly to point out someone besides the accused as the guilty party.

*State v. Jones,* 26 Wn. App. 551, 555, 614 P.2d 190 (quoting *State v. Downs,* 168 Wash. 664, 13 P.2d 1 (1932)), *review denied,* 94 Wn.2d 1008 (1980). Here, circumstances linking Abram to the crimes charged in this case are sufficiently remote to provide a tenable basis for the trial court's decision to place limits on the amount of testimony introduced about Abram. Appellant argues that the alleged physical resemblance between appellant and Abram, the mere fact that Abram was in the same city and once in the same area as the attacks, and the fact that he committed a purse snatching, a very different crime from appellant's, indicate Abram might have committed these crimes. The alleged resemblances do not clearly point to Abram as the guilty party. *Jones,* at 555. The trial court did not err.

Similarly, the only connection between the other proffered testimony regarding other possible look–alikes was speculation and coincidence. The court did not abuse its discretion. *Jones,* at 555.

We next address whether the trial court erred in restricting the cross examination about the prior convictions of certain of the prosecution's witnesses in order to impeach their credibility. Appellant claims his right to confront his accusers was denied by the court's refusal to allow him to cross–examine two State witnesses about their criminal records. Julie Carney, who has a criminal record for prostitution and who was on misdemeanor probation at the time, testified that Briggs does not always stutter. Jeffrey Maesner testified that while he was an inmate at King County

Jail he had several conversations with appellant and that appellant does not always stutter. Appellant was not permitted to cross–examine Maesner on whether a recent reduction in charges against him was related to his testimony against appellant.

The trial court did not abuse its discretion in either case. In Carney's case, the court denied the introduction of her misdemeanor criminal history because there was no showing that there was any connection between her arrests or probation and any motive by the witness to fabricate testimony. The court noted that there was no order in place that would be revoked if she failed to cooperate or any showing that the police or others would offer her consideration in the future if she failed to cooperate with appellant's prosecution.

Otherwise inadmissible evidence of prior convictions is admissible in cross examination if the witness's testimony provides "a crucial link in the proof" against the defendant. *Davis v. Alaska,* 415 U.S. 308, 317, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974). Nothing in the record suggests that Carney's testimony was critical to appellants' prosecution or that her criminal record created a likelihood that she would be biased against appellant. Accordingly, *Davis* does not mandate that appellant have unrestricted cross examination into Carney's criminal record. *See Davis,* 415 U.S. at 317–18; *see also* ER 609.

Similarly, *Davis* does not require that appellant be permitted to conduct cross examination into Maesner's criminal history. Appellant's principal interest in Maesner's criminal history was in the reduction of a first degree murder charge to rendering criminal assistance. The reduction was given in return for Maesner's cooperation with the police. It is apparent, however, from the record in this case that at the time Maesner came forward with the information about appellant, he had already been sentenced in the prior matter involving the charge reduction. Since it involved a felony, the fact of this conviction was allowed into evidence under ER 609. There was no reason under

*Davis* to permit cross examination about bias because there was no showing that Maesner was in any position to have leverage applied to him in return for his testimony. Moreover, he did not provide testimony critical to appellant's prosecution. Accordingly, the court did not err by excluding cross examination on the matter. *See Davis,* 415 U.S. at 318.

We finally address whether the trial court improperly calculated appellant's sentence by considering rape and robbery to constitute different criminal conduct.[5] At sentencing, the trial court counted the first degree robbery against A.W. and the attempted rape of her as separate offenses, thereby increasing appellant's offender score.

 RCW 9.94A.400(1) provides:

**Consecutive or concurrent sentences.** (1) (a) Except as provided in (b) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: *Provided,* That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently.

The test for whether different offenses constitute the same criminal conduct is set forth in *State v. Dunaway,* 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987).

[I]n deciding if crimes encompassed the same criminal conduct, trial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. As it did in [*State v.*] *Edwards,* [45 Wn. App. 378, 725 P.2d 442 (1986), part of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same. *See Edwards,* at 382.

*Dunaway,* at 215; *see also State v. Collicott,* 112 Wn.2d 399, 404–06, 771 P.2d 1137 (1989). The objective intent of rape and robbery are entirely different. The two crimes in

---

[5]This issue is significant only in the event that appellant is convicted on retrial.

this case may have been committed at the same time and place, but neither offense was committed in furtherance of the other. Accordingly, the trial court did not err by considering them to be separate crimes. *Dunaway,* at 215; *cf. State v. Rienks,* 46 Wn. App. 537, 544, 731 P.2d 1116 (1987) (assault, burglary, and robbery constituted same criminal conduct because defendant had sole purpose of taking victim's money, and each crime furthered that purpose).

In light of our disposition of this case, appellant's remaining assignments of error need not be addressed.

We do not take lightly our decision to reverse the trial court. The trial judge presided over a difficult trial with care and skill. Neither the court nor counsel was in a position to prevent, detect, or remedy the juror misconduct forming the basis of our decision to reverse this conviction. We also recognize the regrettable burden our decision imposes on the victims who will be called upon once again to testify in this matter. Nonetheless, we cannot permit a criminal conviction to stand where the jury's deliberations have been tainted by prejudicial misconduct. To do so would violate the fundamental principle that a defendant is entitled to a fair determination of guilt or innocence.

The judgment of the trial court is vacated and this cause is remanded to the trial court for further proceedings consistent with this opinion.

GROSSE and PEKELIS, JJ., concur.