[Nos. 51415-6-I; 51575-6-I. Division One. March 1, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL JOHN TANDECKI, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. NICOLAS ANDRES PETTITT, *Appellant*.

*David B. Koch* and *Christopher Gibson* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Erin E. Ehlert* and *Victoria J. Van Nocken, Deputies*, for respondent.

BAKER, J.— In these appeals we are called upon to determine whether the term "immediately" is an essential element of the crime of attempting to elude a pursuing police vehicle.[1] We conclude that it is not. We further conclude that the use of a charging document which did not use the word "immediately" did not prejudice either appellant.

Nicolas Andres Pettitt also argues that the jury's discussion of their personal experiences and opinions regarding car accidents was juror misconduct because this constituted extrinsic evidence. We disagree, and affirm both convictions.

I

*Daniel John Tandecki*

After following a vehicle traveling at a high rate of speed without its lights on, an Auburn city police officer activated his emergency lights and siren. The driver, Daniel Tandecki, did not stop. During the ensuing chase through rural and residential neighborhoods, Tandecki ran three

---

[1] Because both of these cases involve identical issues, we link them together in one opinion.

stop signs, drove his vehicle in the opposite lane of traffic, and reached speeds of 90 miles per hour. The chase ended only after another officer placed a spike strip across the road, puncturing three of Tandecki's tires.

Tandecki was charged with attempting to elude a pursuing police vehicle under RCW 46.61.024. The statute provides:

> Any driver of a motor vehicle *who willfully fails or refuses to immediately bring his vehicle to a stop* and who drives his vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.[2]

The amended information alleged:

> That the defendant . . . while driving a motor vehicle and having been given a visual and an audible signal by a uniformed police officer to bring the vehicle to a stop, *willfully failed and refused to stop* and drove the vehicle in a wanton and willful disregard for the lives and property of others while attempting to elude a marked official pursuing police vehicle.

(Emphasis added.) Tandecki did not challenge the adequacy of the amended information until his appeal. The court found Tandecki guilty of attempting to elude.

*Nicolas Andres Pettitt*

Police received a 911 dispatch reporting that a recently stolen Chevrolet Blazer had been sighted at a service station. The responding officer pulled up behind the Blazer as it was pulling out of its parking place. He activated flashing lights on his car and got out, drew his gun, and walked quickly up to the driver's window. He pointed his gun at the driver through the open window and said, "police, freeze." The driver gave the officer a "kind of a

---

[2] RCW 46.61.024(1) (emphasis added).

sideways glance," looked straight forward, and accelerated away.

Officers initially pursued the Blazer, then discontinued the chase. Minutes later, the Blazer collided with another vehicle. After the crash, several police officers began searching for suspects. Another officer arrested Pettitt, who was later identified as the driver who had sped away from the service station.

The State charged Pettitt with attempting to elude a pursuing police vehicle under RCW 46.61.024, and several other crimes. Pettitt did not challenge the amended information until this appeal.

At trial, Pettitt offered the testimony of Kevin Bensel, a part-time forensic engineer, who analyzed photographs of the Blazer and concluded that it was highly unlikely Pettitt was driving the Blazer at the time of the collision. In particular, Bensel relied on pictures indicating that the Blazer's steering wheel was bent as if the driver's body had hit it. Bensel predicted that an impact causing such damage to the steering wheel would have likely resulted in extensive injuries to the driver, from bruising to broken ribs or a broken sternum. After reviewing Pettitt's medical records from the night of the crash, Bensel opined that Pettitt did not have injuries consistent with hitting the steering wheel.

Following deliberations, the jury found Pettitt guilty of several crimes including attempting to elude a pursuing police vehicle. The defense then filed a motion for a new trial based on comments jurors made regarding their deliberations. In particular, the defense argued that during deliberations "individual jurors had shared knowledge, unique personal experiences and purported expertise about automobile accidents and medical injuries." The trial court allowed defense counsel to contact the jurors to prepare affidavits.

A defense investigator prepared declarations describing his interviews with jurors. The affidavit explained that during deliberations, jurors had discussed how some people

would come away from apparently severe accidents without any injuries. One juror stated that some jurors "had been in accidents and they talked about the spectrum of injuries, . . . [t]here could be a range: no injuries to very severe," and that "[s]ome jurors had fairly little injuries: just got dinged and got whiplash," while "[o]thers got really wrecked and walked away." Another juror remembered that the jurors had spoken about personal experiences, or those of people they knew, where people were "in car accidents that appeared worse and walking away uninjured," and that two or three jurors "felt it wasn't unusual." One juror remembered general discussion during deliberations about looking at a car and thinking that the occupants should have been injured but they were not.

The trial court denied the motion for a new trial, specifically finding that being a participant or observer in a car accident is within the common experience of at least 90 percent of jurors, that discussing such common experience did not constitute extrinsic evidence, and that the jury's discussion merely weighed the defense expert's testimony.

## II

Tandecki and Pettitt contend for the first time on appeal that by omitting the word "immediately" in their respective charging documents, the State omitted an essential element of the crime. They argue that "immediately" is a critical element because without it, "so long as the defendant stopped his vehicle at some point [but not immediately], there would be no crime."

Both the federal and state constitutions protect defendants by requiring that they be informed of the nature and cause of the charges against them.[3] When an information omits a statutory element of a charged crime, it is consti-

---

[3] U.S. Const. amend. VI; Wash. Const. art. I, § 22.

tutionally insufficient because it fails to state an offense.[4] This requirement protects defendants by informing them of the charges against them and by allowing them to prepare a defense.[5]

 In an information or complaint for a statutory offense, it is sufficient to charge using language of the statute if the statute defines the crime sufficiently to apprise an accused person with reasonable certainty of the nature of the accusation.[6] But a charging document need not repeat the statutory elements of an offense in the exact language of the statute. Instead, the charging document may use words which equivalently or more extensively signify the words in the statute.[7]

 The crime of attempting to elude a pursuing police vehicle is codified at RCW 46.61.024. The statute explains that attempting to elude occurs when:

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.[8]

Washington courts have articulated this offense as a three-part test. As the court in *State v. Hudson*[9] explained:

> Eluding occurs when (1) a uniformed officer in a marked vehicle gives a signal to stop, (2) a driver willfully fails to stop, and (3)

---

[4] *State v. Greathouse*, 113 Wn. App. 889, 899, 56 P.3d 569 (2002), *review denied*, 149 Wn.2d 1014 (2003).

[5] *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991).

[6] *State v. Leach*, 113 Wn.2d 679, 686, 782 P.2d 552 (1989); *see also* RCW 10.37.050.

[7] *Leach*, 113 Wn.2d at 686 (citing *State v. Knowlton*, 11 Wash. 512, 39 P. 966 (1895)).

[8] RCW 46.61.024(1).

[9] 85 Wn. App. 401, 932 P.2d 714 (1997).

the driver exhibits a willful or wanton disregard for others in attempting to elude the police vehicle.[10]

In *State v. Stayton*,[11] the court concluded that each element in attempting to elude is predicated on the previous element.[12] Accordingly, when a defendant willfully fails to stop, he has not yet committed the crime of attempting to elude. The defendant must at some point also attempt to elude *before* stopping. To commit the crime of attempting to elude, a defendant cannot have stopped, immediately or otherwise, before satisfying the third element.

■ The term "immediately" is not an element of attempting to elude because it does not modify the required element of "willfully fails to stop." Because the third element requires that the driver is "attempting to elude a pursuing police vehicle" after willfully failing to stop, it is self evident that the driver has not stopped when he eludes the officer.

Because we conclude that "immediately" is not an essential element of attempting to elude, we need not apply *State v. Kjorsvik*'s[13] two-prong test to the charging document.[14] Under *Kjorsvik*, when deficiency is raised for the first time on appeal, the appellate court examines the document to determine if "there is any fair construction by which the elements are all contained in the document."[15] If the document can be upheld on this basis, then the defendant must show "that he was nonetheless prejudiced by any

[10] *Hudson*, 85 Wn. App. at 403 (citing *State v. Stayton*, 39 Wn. App. 46, 49, 691 P.2d 596 (1984)).

[11] 39 Wn. App. 46, 691 P.2d 596 (1984).

[12] *Stayton*, 39 Wn. App. at 49-50 ("There can be no 'attempt to elude' unless there is the prerequisite knowledge that there is 'a pursuing police vehicle.' There can be no willful failure to stop unless there is the prerequisite knowledge that a statutorily appropriate signal has been given by a statutorily appropriate police officer.").

[13] 117 Wn.2d 93, 812 P.2d 86 (1991).

[14] *Kjorsvik*, 117 Wn.2d at 105-06.

[15] *State v. Hopper*, 118 Wn.2d 151, 155-56, 822 P.2d 775 (1992) (citing *Kjorsvik* 117 Wn.2d at 105).

vague or inartful language" in the charging document.[16] On the other hand, "[i]f the accused can show that he or she actually lacked the requisite notice to prepare an adequate defense, the conviction should be dismissed."[17]

We have concluded that all essential elements were contained in the two informations, so it is unnecessary to decide whether Tandecki or Pettitt were prejudiced by language employed in their charging documents.[18] Nevertheless, we note that neither appellant claims any prejudice.

■ Pettitt also argues that the trial court erred by denying his motion for a new trial based on juror misconduct. A trial court may grant a new trial based on juror misconduct when it affirmatively appears that a substantial right of the defendant was materially affected.[19] A new trial may be warranted based on juror misconduct if a jury considers information other than the evidence admitted at trial.[20] A trial court's decision to deny a new trial is reviewed for abuse of discretion.[21]

Relying on *State v. Briggs*,[22] Pettitt argues that the trial court abused its discretion in denying his motion for a new trial. In *Briggs*, during voir dire defense counsel asked if there was "anyone in the panel who has any past experience, study or contact with stuttering or speech problems in general?"[23] Following Briggs' conviction, his attorney learned that a juror, who had not responded to the voir dire question, related to the jury that he once had a speech

---

[16] *Kjorsvik*, 117 Wn.2d at 111.

[17] *Hopper*, 118 Wn.2d at 156.

[18] *Kjorsvik*, 117 Wn.2d at 111.

[19] CrR 7.5(a)(2).

[20] *State v. Brown*, 139 Wn.2d 20, 24, 983 P.2d 608 (1999).

[21] *State v. Balisok*, 123 Wn.2d 114, 117, 866 P.2d 631 (1994).

[22] 55 Wn. App. 44, 776 P.2d 1347 (1989).

[23] *Briggs*, 55 Wn. App. at 47.

production problem that only occurred in certain circumstances and was amenable to control.[24]

On appeal, a new trial was ordered because the juror "committed two closely related acts of misconduct—material nondisclosure during voir dire and the use of the undisclosed information during jury deliberations."[25] The court concluded that this misconduct resulted in actual prejudice because Briggs was denied the opportunity to detect and prevent the use of a juror's experience during deliberation, and by the use of undisclosed and highly specialized extraneous evidence during deliberations.[26]

■ Contrary to Pettitt's claim, *Briggs* is easily distinguished. Pettitt does not contend that any particular juror withheld information during voir dire. And observing or being involved in car accidents is within the common experience of the vast majority of jurors. Pettitt does not contend that any particular juror introduced some undisclosed and highly specialized information regarding car accidents and resulting injuries. Instead, the jury apparently discussed the range of possible injuries resulting from car accidents and properly deliberated over the credibility and weight to be given to the defense expert's opinion evidence, as instructed. Pettitt has failed to demonstrate any juror misconduct.

We affirm both Tandecki's and Pettitt's convictions.

KENNEDY and ELLINGTON, JJ., concur.

Review granted at 152 Wn.2d 1024 (2004).

---

[24] *Briggs*, 55 Wn. App. at 47.

[25] *Briggs*, 55 Wn. App. at 54 (footnote omitted).

[26] *Briggs*, 55 Wn. App. at 54.