155 P.3d 183 (2007)
STATE of Washington, Respondent,
v.
Jimi Lee JOHNSON, Appellant.
No. 33645-6-II.
Court of Appeals of Washington, Division 2.
April 10, 2007.
*184 Thomas Edward Doyle, Hansville, WA, Patricia Anne Pethick, Tacoma, WA, for Appellant.
Monty Dale Cobb, Mason County Prosecutors Office, Shelton, WA, for Respondent.

OPINION PUBLISHED IN PART
PENOYAR, J.
¶ 1 NT was attacked in her bed by a man she later identified as Jimi Lee Johnson. After a jury trial, Johnson was convicted of first degree burglary with sexual motivation, indecent liberties, and first degree attempted rape. He now appeals, arguing in part that he was denied his right to a fair trial due to juror misconduct. We agree. A juror's nondisclosure at voir dire, combined with her later interjection of the nondisclosed information into jury deliberations, prejudiced Johnson, and we remand for a new trial.

FACTS
¶ 2 On the evening of May 15, 2004, Johnson visited the residence of Russell Cultee (Cultee residence), where NT was staying. When Johnson left with Cultee and his friends, NT went to bed. Later that evening, she awoke to find Johnson on top of her, "trying to pull down [her] pants and . . . to spread [her] legs open." 9 Report of Proceedings (RP) at 77. NT later testified that there was skin-to-skin contact. She asked him repeatedly to stop and get off of her and finally was able to push him off. When she flipped on the light switch, she "[saw] Jimi Johnson." 9 RP at 79. Johnson *185 grabbed her arm, and NT "told him no" and ran to a friend's house across the street. 9 RP at 80. Johnson followed her into the house but ran away after NT's friend "grabbed a big old stick and chased him out the door." 9 RP at 81.
¶ 3 Johnson was taken into custody at his residence later that evening. The following morning, NT identified Johnson as her assailant.
¶ 4 Johnson was charged with first degree burglary with sexual motivation (count I), residential burglary with sexual motivation (count II, charged in the alternative to count I), indecent liberties (count III), first degree attempted rape (count IV, charged in the alternative to counts V and VI), second degree attempted rape (count V, charged in the alternative to counts IV and VI), and second degree assault with sexual motivation (count VI, charged in the alternative to counts IV and V).
¶ 5 Trial commenced November 22, 2004. A jury returned guilty verdicts on all charges except second degree attempted rape (count V). The jury also returned special verdicts finding sexual motivation for counts I, II, and VI and found that count VI was committed with the intent to commit first degree rape.
¶ 6 The trial court dismissed the alternative counts II and VI and sentenced Johnson within his standard range on counts I, III, and IV.
I. JUROR NONDISCLOSURE
¶ 7 On January 5, 2005, the trial court received a letter from the presiding juror (juror A) in the case expressing her concerns about possible juror misconduct. In response to in-court questioning, the juror A testified that in the "last third of the deliberations," during a "lively debate," juror B stated that "[Juror A] wouldn't understand unless [she] had the experience of [her] daughter being raped or attempted rape. And . . . her story not being believed." 14 RP at 359. Ultimately, three jurors other than juror A testified that they heard another juror disclose information about a sexual assault.[1]
¶ 8 Juror B, in response to the court's questions, testified that she did disclose that her daughter had been a date rape victim. She stated that the comment was not during deliberations  that they had already decided the verdict and were "sitting around just talking." 14 RP at 377.
¶ 9 Juror B further testified that her daughter's date rape did not come to mind during voir dire questioning "because this happened over 14, 15 years ago." 14 RP at 379. During voir dire, the trial court asked the juror pool whether they "or a family member or a close friend ever had a similar experience with this type of case? . . . Have your [sic] or a family member or a relative or close friend had a personal experience with a sexual assault case?" 1 Clerk's Papers (CP) at 78. Eight members of the initial jury pool answered in the affirmative, and each were spoken with individually. Of those eight, five were excused for cause. The other three were allowed to remain in the jury pool because, after questioning, they asserted that they could be fair.[2]
¶ 10 The trial court entered findings of fact on the juror misconduct issue as follows:
VIII. The court finds that juror [B] disclosed during the course of the jury deliberations that her daughter had been the victim of `date rape.'
IX. That during the course of the voir dire process prior to the evidentiary phase of the trial herein the court asked the members of the jury pool the question `Have you or a family member or close friend ever had a similar experience with *186 this type of case, . . . Have you or a family member or relative or close friend had a personal experience with a sexual assault case.' In light of the actual question asked by the court pertaining to an experience with a `sexual assault case', as opposed to an incident of sexual assault, the court does not find that [juror B] withheld material information during voir dire.
. . .
X. That one comment was made by juror [B] that her daughter had been the victim of date rape. That the comment was made during the deliberation phase of the trial. That the comment was heard or overheard by only four jurors. That the comment was not discussed further. That the comment was made in casual conversation as opposed to being part of the deliberation process. That the comment did not become a subject of the actual deliberations. That the court finds that there are no reasonable grounds to believe that the defendant was prejudiced by the comment by juror [B]. The court finds no juror misconduct by the interjection of any extraneous evidence or information into the deliberations by [juror B] on this alleged basis.
Supplemental CP at 330-31.
¶ 11 The trial court denied Johnson's motion for a new trial, and this appeal followed.

ANALYSIS
I. JUROR MISCONDUCT
¶ 12 Johnson argues that juror B's withholding of information at voir dire, along with her injection of this information into deliberations, amounts to juror misconduct sufficient to warrant a new trial. The State responds that the lack of disclosure at voir dire is insufficient to warrant a new trial under the rule the United States Supreme Court set out in McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).[3]
¶ 13 In McDonough, a products liability case, the Supreme Court declined to grant a new trial where a juror did not disclose that his son had been the victim of an accident involving a truck tire. McDonough, 464 U.S. at 550-51, 104 S.Ct. 845. The Court decided that "[t]o invalidate the result of a 3-week trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." McDonough 464 U.S. at 555, 104 S.Ct. 845. Accordingly, the court held that to obtain a new trial, a party must first demonstrate that a juror failed to honestly answer a material question on voir dire and then show that a correct response would have provided a valid basis for a challenge for cause. McDonough, 464 U.S. at 556, 104 S.Ct. 845.
¶ 14 McDonough applies here, as the initial point of alleged juror misconduct occurred when Juror B offered inaccurate answers at voir dire. However, Johnson argues that another juror misconduct incident occurred when juror B injected this information into deliberations. Where the record demonstrates that the undisclosed information is later employed in the jury's deliberations, additional analysis is required. State v. Briggs, 55 Wash.App. 44, 53, 776 P.2d 1347 (1989).
¶ 15 When a juror withholds material information during voir dire and then later injects that information into deliberations, the court must inquire into the prejudicial effect of the combined, as well as the individual, aspects of the juror's misconduct. Briggs, 55 Wash.App. at 53, 776 P.2d 1347.
¶ 16 Voir dire protects the right to an impartial jury by exposing possible biases. McDonough, 464 U.S. at 554, 104 S.Ct. 845. Truthful answers by prospective jurors are necessary for this process to serve its purpose. McDonough, 464 U.S. at 554, 104 S.Ct. 845. Had juror B answered truthfully to the relevant voir dire questions, Johnson could have pursued the matter to examine *187 whether to excuse her for cause, or at least to ask her whether she could refrain from discussing her personal experiences during deliberations. As described above, every other juror who answered in the affirmative to the court's question on sexual assault was asked about their experiences and whether they could be fair, and five were excused for cause. The other three jurors were allowed to stay only after they asserted that they could put their personal experiences aside and be objective about the case at hand.
¶ 17 Juror B's injection of nondisclosed information into deliberations illustrated that she could not be objective about the case at hand  the precise danger that voir dire is designed to prevent. Due to her actions, Johnson was denied the protection voir dire offers to preserve jury impartiality.
¶ 18 Johnson was also likely prejudiced by the injection of juror B's personal undisclosed information into deliberations. Juror misconduct involving the use of extraneous evidence during deliberations will entitle a defendant to a new trial if there are reasonable grounds to believe a defendant has been prejudiced. Briggs, 55 Wash.App. at 55, 776 P.2d 1347 (citing State v. Lemieux, 75 Wash.2d 89, 91, 448 P.2d 943 (1968)). Any doubt that the misconduct affected the verdict must be resolved against the verdict. Briggs, 55 Wash.App. at 55, 776 P.2d 1347 (citing Halverson v. Anderson, 82 Wash.2d 746, 752, 513 P.2d 827 (1973)). This is an objective inquiry into whether the extraneous evidence could have affected the jury's determination, not a subjective inquiry into the actual effect of the evidence, and includes consideration of the purpose for which the extraneous evidence was interjected into deliberations. Briggs, 55 Wash.App. at 55-56, 776 P.2d 1347. A new trial must be granted unless "it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict." Briggs, 55 Wash. App. at 56, 776 P.2d 1347 (quoting United States v. Bagley, 641 F.2d 1235, 1242 (9th Cir.1981)).
¶ 19 Here, the purpose for which juror B injected her information into deliberations is unclear. She argues that it was "small talk," 14 RP at 376, but other jurors remember that she was "frustrated," 14 RP at 411, and that it was in the midst of a "lively debate." 14 RP at 359. Objectively, it seems that her comment was injected to generate sympathy for the victim, a witness in this case. Regardless of purpose, it seems quite likely that her comment gave greater credibility and sympathy to the witness.
¶ 20 A review of the record therefore indicates that Johnson was prejudiced by two related instances of juror misconduct: (1) nondisclosure during voir dire, and (2) injection of the undisclosed information into the jury's deliberations. Furthermore, the trial court did not specifically examine the combined effects of juror B's actions, only considering them separately.
¶ 21 As stated above, the trial court found that juror B did not withhold information during voir dire because the court's question asked about experience with a "sexual assault case," not any sexual assault incident. Supplemental CP at 330. The trial court separately found that there were "no reasonable grounds to believe that the defendant was prejudiced by the comment by [juror B]." Supplemental CP at 331. Accordingly, the trial court denied Johnson's motion for a new trial.
¶ 22 A trial court's discretionary ruling regarding a new trial will not be reversed absent an abuse of discretion. State v. Cho, 108 Wash.App. 315, 320, 30 P.3d 496 (2001). However, while great deference is due to the trial court's determination that no prejudice occurred, greater deference is owed to a decision to grant a new trial than a decision not to grant a new trial. Briggs, 55 Wash.App. at 60, 776 P.2d 1347. A trial court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. Briggs, 55 Wash.App. at 60, 776 P.2d 1347.
¶ 23 The trial court here should have granted Johnson a new trial. It did not consider the combined effect of juror B's actions at voir dire and during deliberations but, rather, only examined them separately. Furthermore, the court did not objectively examine whether juror B's injected information *188 could have affected the jury's determination.
¶ 24 We cannot conclude that Juror B's material nondisclosure, coupled with her later discussion of the undisclosed information during deliberations, was harmless beyond a reasonable doubt. Her actions could easily have affected the jury's verdict. This misconduct prejudiced Johnson because it deprived him of an impartial jury and a fair trial. While a new trial would impose a serious burden on the victims and other participants in this matter, a criminal conviction cannot be permitted to stand where prejudicial misconduct tainted the jury's deliberations. Therefore, we remand for a new trial.
¶ 25 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: BRIDGEWATER, P.J., and ARMSTRONG, J.
NOTES
[1] Juror C testified that she remembered another juror disclosing during deliberations that her daughter was the victim of a date rape or attempted rape, and "[s]he . . . seemed frustrated because we were deliberating." 14 RP at 411. Juror D testified that he remembered "hearing something about" a female juror disclosing during deliberations that her daughter had been the victim of a rape, attempted rape, or sexual assault. 14 RP at 427. Finally, juror E testified that he heard that "a lady . . . talked about . . . rape in the family" during deliberations. 14 RP at 430-33.
[2] A similar pattern occurred in the afternoon voir dire session, but none of the jurors from that session ended up on the jury.
[3] The State also argues that the low number of jurors exposed to the information illustrates no prejudice to defendant. The number of jurors who heard the information is irrelevant. Criminal defendants in Washington have a right to a unanimous jury verdict. State v. Ortega-Martinez, 124 Wash.2d 702, 707, 881 P.2d 231 (1994) (citing WASH. CONST. art. 1, § 21). Therefore, if the information changed even one juror's mind, it prejudiced the verdict.