# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46352-1-II |
| Respondent, | |
| v. | |
| DEVENNICE ANTOINE GAINES, | PART PUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Devennice Gaines appeals his convictions and sentence for the second degree murder of Bruce Price and for unlawful possession of a firearm. In the published portion of this opinion we hold that (1) the trial court did not deny Gaines's right to a fair and impartial jury when it denied his motion for a mistrial after jurors heard extrinsic information. In the unpublished portion of this opinion we hold that (2) the trial court did not deny Gaines's right to a unanimous verdict when it dismissed a juror without examining his ability to be fair, (3) the prosecutor did not commit misconduct by attributing a statement to Gaines during closing argument, (4) the trial court did not violate Gaines's right to confront witnesses or his right to present a defense by limiting his cross-examination of three witnesses, (5) the trial court did not err by denying his motion to dismiss the case with prejudice due to governmental misconduct, but that (6) the trial court erred by failing to conduct an individualized inquiry into his ability to pay his legal financial obligations (LFOs). Consequently, we affirm Gaines's convictions, but we remand to the trial court to consider Gaines's ability to pay discretionary LFOs. Finally, we exercise our discretion and waive appellate costs.

FACTS

Gaines went to an after-hours party at a motorcycle club in Tacoma, accompanied by two female friends: Lakheea Thomas and Denise Green. During the party, Gaines had an altercation with Dashe Tate, who was in a wheelchair. Gaines knocked Tate out of his wheelchair. Several men then surrounded Gaines, shouting at him.

Thomas and Green left the club during the altercation, followed by Gaines. Outside, Price confronted Gaines for knocking Tate out of his wheelchair. Green heard Gaines tell her: "[B]itch, get to the car." 9 Verbatim Report of Proceedings (VRP) (Mar. 31, 2014) at 1025. She also remembered someone instructing her to "get in the car, something's about to go down," but she was not sure if it was Gaines who said this entire statement to her. 9 VRP (Mar. 31, 2014) at 1026. Witnesses then heard several gunshots. Price was shot multiple times and died. Soon after the shooting, two witnesses identified Gaines as the shooter.

The State charged Gaines with one count of second degree murder with a firearm enhancement,[1] one count of second degree felony murder committed in the course of second degree assault with a firearm enhancement,[2] and one count of first degree unlawful possession of a firearm.[3]

After all the evidence and arguments were presented, and a few hours into jury deliberations, the presiding juror sent the following note to the trial court: "One juror said out

---

[1] RCW 9A.32.050(1)(a); former RCW 9.94A.533(3) (2011).

[2] RCW 9A.32.050(1)(b); former RCW 9.94A.533(3) (2011).

[3] RCW 9.41.040(1)(a). Gaines stipulated that he had a prior felony for purposes of this charge.

loud that he read in the newspaper 2 years ago, the 'defendant has 2 priors.' Eight jurors heard this. We heard during the trial of [one felony]—it was stipulated. All have said this would not give prejudice. Is this a problem?" Clerk's Papers (CP) at 411. Gaines then moved for a mistrial.

The trial court decided to question the jurors. The court questioned each of the eight affected jurors individually, warning each juror not to mention their impressions of the case or their likely vote. Juror 11 told the court that juror 2 had said something like: "'Why would he do it? He has two strikes against him already. Why would he do it. I don't see why he would do it.'" 14 VRP (Apr. 10, 2014) at 1718. Other jurors said variously that juror 2 said something about Gaines's multiple felonies, "two strikes," or "three strikes." 14 VRP (Apr. 10, 2014) at 1735, 1743. The jurors satisfied the court that they had quickly recognized the problem in hearing the statement and had avoided further tainting deliberations because of it. Some jurors reported that other jurors chastised juror 2 for bringing extraneous facts into the case.

In considering whether to declare a mistrial, the trial court said: "I got the feeling that [the jurors] were very adamant . . . that they could follow [the instructions] that they would be impartial." 14 VRP (Apr. 10, 2014) at 1778. The court deferred ruling on Gaines's motion for a mistrial.

The trial court dismissed juror 2, then impaneled the alternate juror and instructed the entire reconstituted jury to begin deliberating afresh. Specifically, it instructed the jury that "[d]uring this trial juror number 13 was an alternate juror. Juror number 13 has now been seated as a juror in this case. You must disregard all previous deliberations and begin deliberations anew." CP at 473. The trial court then denied Gaines's motion for a mistrial.

3

The jury found Gaines guilty of second degree murder and second degree felony murder. These charges merged. The jury also found him guilty of first degree unlawful possession of a firearm. It further found the aggravating factor that Gaines was armed with a firearm. Gaines appeals.

ANALYSIS

Gaines argues that the trial court abused its discretion and denied his constitutional right to a jury trial when it denied his motion for a mistrial based on juror misconduct. We disagree.

A.      *Standard of Review*

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a fair trial by an impartial jury. "The right of trial by jury means a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct." *State v. Tigano*, 63 Wn. App. 336, 341, 818 P.2d 1369 (1991).

We review a trial court's investigation of juror misconduct for abuse of discretion. *State v. Earl*, 142 Wn. App. 768, 774, 177 P.3d 132 (2008). Similarly, we review a trial court's decision denying a motion for a mistrial based on juror misconduct for an abuse of discretion. *State v. Balisok*, 123 Wn.2d 114, 117, 866 P.2d 631 (1994). A trial court abuses its discretion when it acts on untenable grounds or its ruling is manifestly unreasonable. *State v. Barnes*, 85 Wn. App. 638, 669, 932 P.2d 669 (1997).

"As a general rule, the trial courts have wide discretionary powers in conducting a trial and dealing with irregularities which arise." *State v. Gilcrist*, 91 Wn.2d 603, 612, 590 P.2d 809 (1979). "A mistrial should be granted only when the defendant has been so prejudiced that nothing short of a new trial can insure that defendant will be tried fairly." *Gilcrist*, 91 Wn.2d at

4

612. Only errors that may have affected the outcome of the trial are prejudicial. *Gilcrist*, 91 Wn.2d at 612.

B.      *Extrinsic Evidence*

Gaines argues that the trial court erred by denying his motion for a mistrial after the jury heard extrinsic information. Specifically, Gaines argues that the trial court abused its discretion by applying the wrong legal standard: it subjectively investigated the jurors' ability to be fair, rather than objectively inquiring into whether any prejudice could result. The State argues that Gaines draws this objective standard from an inapplicable line of cases, and therefore, the trial court did not err. We agree with the State.

Consideration of novel or extrinsic evidence constitutes juror misconduct and can require a new trial. *Balisok*, 123 Wn.2d at 118. Extrinsic evidence is information outside what is admitted at trial. *Balisok*, 123 Wn.2d at 118. We may presume prejudice on a showing of misconduct. *State v. Depaz*, 165 Wn.2d 842, 856, 204 P.3d 217 (2009). But that "presumption can be overcome by an adequate showing that the misconduct did not affect the deliberations." 165 Wn.2d at 856.

Gaines relies on cases which involve a key factual distinction from this case. In all the case law Gaines cites on this point, the trial court was ruling on a postverdict motion.[4] By

---

[4] *See, e.g.*, *Breckenridge v. Valley Gen. Hosp.*, 150 Wn.2d 197, 205 n.13, 75 P.3d 944 (2003); *Gardner v. Malone*, 60 Wn.2d 836, 841, 376 P.2d 651 (1962); *Turner v. Stime*, 153 Wn. App. 581, 589-90, 222 P.3d 1243 (2009); *State v. Johnson*, 137 Wn. App. 862, 870, 155 P.3d 183 (2007); *State v. Boling*, 131 Wn. App. 329, 331-32, 127 P.3d 740 (2006); *State v. Tigano*, 63 Wn. App. 336, 338, 818 P.2d 1369 (1991).

contrast, here the jury notified the trial court of a potential issue on the first day of deliberations, before reaching a verdict.

When a jury hears extrinsic information and where that extrinsic information *inheres in the verdict*, the trial court must make an objective inquiry, asking whether the evidence could have affected the jury's verdict. *Breckenridge v. Valley Gen. Hosp.*, 150 Wn.2d 197, 204, 75 P.3d 944 (2003); *State v. Johnson*, 137 Wn. App. 862, 870, 155 P.3d 183 (2007). This objective test exists because trial courts are not allowed to impeach a jury's verdict by probing into the subjective mental processes of the jurors. *Gardner v. Malone*, 60 Wn.2d 836, 840-41, 376 P.2d 651 (1962). After a jury renders a verdict, it is improper for a trial court to ask jurors about their subjective reasoning—thus, the trial court may not ask whether the extrinsic evidence subjectively influenced the jury's verdict, and it must instead apply the objective test. *Gardner*, 60 Wn.2d at 840-41.

This objective standard applies only after a verdict has been rendered. A "trial court may not consider *postverdict* juror statements that inhere in the verdict when ruling on a new trial motion." *Breckenridge*, 150 Wn.2d at 204 (emphasis added). The logic underlying the objective test does not apply before the jury reaches a verdict, such as here, because there is no verdict to impeach. In other words, a trial court may ask questions of the jurors' subjective ability to disregard extrinsic information before there is a verdict to potentially impeach. Nor is there a reason the trial court must rely on the objective standard of whether the information could have impacted the verdict, because there is not yet a verdict. Neither case law nor logic requires us to apply the objective test where, as here, there is no verdict to impeach.

Gaines argues only that the trial court erred by failing to inquire objectively into the potential prejudice resulting from the extrinsic information. He does not otherwise argue that the trial court abused its discretion when it denied him a mistrial after determining that each juror could be fair. He provides no argument or authority for the proposition that the trial court abused its discretion, apart from arguing that it applied the wrong legal standard. Thus, his argument fails.

Gaines also argues that the trial court never instructed the jurors to disregard extrinsic information, but this is inaccurate. The jurors were instructed to consider only the evidence in the case. Moreover, when the trial court replaced juror 2 with the alternate juror, it instructed the newly constituted jury to "disregard all previous deliberations and begin deliberations anew." CP at 473. Thus, taking the instructions as a whole, the trial court instructed the jury to consider only the evidence admitted at trial, and to disregard their deliberations that had been tainted by extrinsic information. Gaines's argument fails.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

During the police investigation of the shooting, Detective Vickie Chittick interviewed witnesses. Thomas's accounts were inconsistent. In an April 17 interview with Detective Chittick, Thomas said she attended the party at the club with Green and Gaines, all three were present when the shooting occurred, Gaines was wearing a long sleeve gray shirt, and she did not see who the shooter was. But in a July 17 interview, Thomas told Detective Chittick that she and

Gaines did not come to the club together, she heard a disturbance in the club and started running, she ran outside not knowing where Gaines was, she ran to her car and heard gunshots from behind her, and then left with Green. Thomas claimed Price's friends shot Price. Conversely, Green consistently told detectives that she arrived at and left the party with both Gaines and Thomas.

After the State charged Gaines with his crimes, the State charged Thomas with second degree murder with a firearm enhancement, second degree felony murder while committing second degree assault, and unlawful possession of a firearm. Thomas and Gaines were joined as codefendants.

On September 10, 2013, before any witnesses were called in Gaines and Thomas's joint trial, Detective Chittick told prosecutors that she had failed to include certain details from her handwritten notes in her official report from her first interview with Thomas. These details included that Thomas appeared to "shak[e her] head yes" when police named Gaines as the shooter. CP at 146.

Prosecutors immediately disclosed this information to the trial court. The trial court called a six-day recess to allow time for Gaines's counsel to conduct additional discovery. Meanwhile, Thomas voluntarily provided a proffer statement to the State, describing her testimony. In this proffer, she admitted that both Gaines and Green went to the party with her.

On September 12, 2013, the State moved to dismiss Thomas's charges, claiming that on Tuesday, September 10, 2013, the State received new information from law enforcement that would prevent the State from proving its case against Thomas. The trial court granted this motion.

8

Gaines then moved to dismiss his case with prejudice under CrR 8.3. Gaines argued that proceeding with trial after Thomas's dismissal and proffer would force him to choose between his rights to speedy trial and adequately prepared counsel. Gaines's argument about why the proffer made him unprepared was not specific. He argued that the proffer contained "significant information that changes the aspects of our case," and that counsel thought it would be "necessary to go back and interview Ms. Green, as well as [two other witnesses]. . . . Ms. Thomas'[s] information completely changes and puts a new dynamic on their observations at the time." VRP (Sept. 16, 2013) at 105. He also speculated that the proffer statement must have been important because it induced the State to dismiss Thomas's case. But Gaines identified no new facts in the statement, nor did he say why it would alter other witnesses' testimony.

In denying Gaines's motion to dismiss under CrR 8.3, the trial court stated:

I find that mismanagement did occur. I think the mismanagement was in the failure to disclose the notes and do that in a timely manner. I don't find it was ill will or intentional, and I am aware of the case law that says that you don't have to make a finding that it was intentional or in bad faith in order to dismiss under 8.3, but I think it's an important factor for the Court to consider. . . .

But I don't find that this mismanagement at this stage of the trial is of such a severe consequence that it would prejudice the defense counsel in terms of preparing his case and presenting it to the jury or that it . . . would have affected the outcome of the trial with a juror because, again, the . . . jurors have heard absolutely no evidence in this case.

And, two, because the mismanagement was discovered before the first witness was called, the Court has already started the remedial process in giving additional time for defense counsel to prepare for his defense with that knowledge before even the first witness is called.

Therefore, I do not find that the remedy in this case is to dismiss the case but to grant defense additional time to adjust his defense with this knowledge as being disclosed in this recent proffer by Ms. Thomas and through the notes that were not given to defense. But I don't believe irreparable harm has occurred that

9

would affect the outcome of the trial because the Court has, under these fact patterns, an opportunity to cure that prejudice without dismissing the case.

VRP (Sept. 16, 2013) at 120-22.

Immediately after this ruling, Gaines moved for a mistrial, citing the need to reinterview witnesses. The trial court granted this motion.[5]

After the mistrial, Gaines's case proceeded to a second jury trial. The trial court ruled that Gaines would not be permitted to (1) cross-examine Thomas about the dismissal of her case, (2) impeach witness Victor McVea about his 13-year-old felony conviction for forgery, or (3) elicit the fact that Green tended to carry a gun. This case ended in a mistrial when the jury could not reach a unanimous verdict.

A different judge presided over Gaines's next jury trial. In preparation for the new jury trial, the following colloquy occurred:

> [Gaines's Attorney]: [M]y understanding is on a retrial, that the motions in limine, that were argued and ruled on in the prior case kind of become law of the case, and I just wanted to—
>
> [THE COURT]: I think that's true. The exception is if either side wants to review them because they didn't play out the way it was anticipated or something has come up since, or this trial has gone in a different direction. I think there's reasons you can revisit, but for the most part, I think the best mechanism is to have [the rulings] be the rule of the case.
>
> [Gaines's Attorney]: We have transcripts, I think, of three or four of the witnesses, and there were several issues that popped up during their testimonies. And I will try to figure out those and reduce them to writing.

---

[5] Neither party elicited testimony about Thomas's head shake at trial.

1 VRP (Mar. 17, 2014) at 23. Gaines did not request that the trial court revisit any evidentiary

rulings. Later in the trial, Gaines said: "[M]y understanding is we are adhering to those rulings

that [the other judge] made . . . and that's fine." 7 VRP (Mar. 26, 2014) at 607.

At Gaines's second jury trial, witnesses testified to the above facts. In closing argument,

the prosecutor emphasized to the jury that many witnesses had conflicting stories. He said:

> Denise Green, she says, just before the shooting, she hears Mr. Price say, you think
> it's cool to hit a dude in a wheelchair, and then we get to this, *bitch, get in the car,*
> *it's about to go down. That's what the defendant says*. Then she turns to go to the
> car and gunfire. . . . But then here's the defendant who [Green] knows saying, bitch,
> get to the car. And then there's gunfire. Why is he saying that? Who drove? Not
> him. [Thomas] drove. *Get to the car, it's about to go down.* Get the car started, I
> got this, I'll be there in a second.

13 VRP (Apr. 9, 2014) at 1642 (emphasis added).

The jury was instructed, in part, that the "evidence that you are to consider during your

deliberations consists of the testimony that you have heard from witnesses, stipulations, and the

exhibits that I have admitted, during the trial. If evidence was not admitted . . . , then you are not

to consider it in reaching your verdict." CP at 413. The jury was also instructed that the

"lawyers' remarks, statements, and arguments are intended to help you understand the evidence

and apply the law. It is important, however, for you to remember that the lawyers' statements

are not evidence. The evidence is the testimony and the exhibits. . . . You must disregard any

remark, statement, or argument that is not supported by the evidence." CP at 414.

After the trial court learned of juror 2's inappropriate comments, it considered whether to

question him or simply dismiss him. The trial court said: "I don't know that at this point with

every juror having confirmed what went on that there's really any need to talk" to that juror. 14

VRP (Apr. 10, 2014) at 1778. The court noted that juror 2 "has clearly demonstrated that they

are unable or unwilling to follow the Court's instructions and have gone way deep into jury misconduct as far as the Court's concerned." 14 VRP (Apr. 10, 2014) at 1778. The court then expressly asked the parties if they saw a need to examine juror 2 on the record, and the parties told the court they did not. The court then dismissed juror 2 without questioning him.

At sentencing, the trial court included a boilerplate finding that Gaines was able to pay his LFOs. It made no individualized inquiry into Gaines's ability to pay. The court imposed LFO's consisting of restitution, a crime victim assessment, deoxyribonucleic acid database fee, criminal filing fee, and court-appointed attorney fees.

ADDITIONAL ANALYSIS

I. DISMISSAL OF JUROR FOR MISCONDUCT WITHOUT INQUIRING INTO HIS ABILITY TO BE FAIR

Gaines argues that the trial court denied his right to a jury trial when it dismissed juror 2 for misconduct without inquiring into his ability to be fair. Specifically, Gaines argues that the trial court knew that juror 2 favored acquittal, and therefore it was unfair to dismiss him.[6] We disagree.

RCW 2.36.110 governs the dismissal of an unfit juror. It provides that the trial court "shall . . . excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror" due to "bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service." RCW 2.36.110. Under CrR 6.5, the trial court may call an alternate juror to deliberate

---

[6] The State argues that Gaines is precluded from arguing this issue because he waived it and because invited error bars review. We do not address whether Gaines waived his right to an impartial jury or whether counsel's conduct constituted invited error; instead we exercise our discretion to consider the merits of this argument. RAP 2.5(a).

when a juror is dismissed. "If the jury has commenced deliberations prior to replacement of an initial juror with an alternate juror, the jury shall be instructed to disregard all previous deliberations and begin deliberations anew." CrR 6.5.

We review the trial court's decision to dismiss an unfit juror for an abuse of discretion. *State v. Elmore*, 155 Wn.2d 758, 768, 123 P.3d 72 (2005). At the same time, defendants have a constitutional right to a unanimous jury verdict and to an impartial jury. *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. To protect these rights, trial courts must not dismiss a juror for misconduct alone where the dismissal "will have a direct and foreseeable effect on the outcome of the case," such as where the trial court knows that the juror is a "holdout" who will not vote to convict. *Depaz*, 165 Wn.2d at 857.

In cases where the trial court knows the juror's opinion, misconduct alone does not permit dismissal "because the court cannot avoid considering the effect of the removal on the jury's deliberations." *Depaz*, 165 Wn.2d at 857. "[W]here the trial court has knowledge of a deliberating juror's substantive opinion of the case, trial courts must make a determination regarding" whether any misconduct committed by the juror has affected the juror's ability to deliberate. 165 Wn.2d at 857. The trial court can replace such a juror if it determines that the misconduct reasonably would have altered the juror's opinion in the case. 165 Wn.2d at 857.

Gaines's argument fails for two reasons. First, the *Depaz* analysis was not necessary because the statements attributed to juror 2 did not give the trial court knowledge of juror 2's substantive opinion of the case. 165 Wn.2d at 857. Instead, his comments (as recalled by other jurors) were generally that he thought Gaines had two prior felonies. One juror recalled him

13

asking rhetorically why Gaines would commit the murder in this case, knowing that it would be his "third strike." Even if this juror correctly recalled juror 2's words, the question did not give the trial court knowledge of juror 2's substantive opinion of the case. The question was ambiguous: it could have meant either that juror 2 was convinced of Gaines's guilt and stating his opinion that it was foolish for someone with that history to commit a third felony, or that juror 2 thought Gaines's two prior felonies would have made him less likely to commit a "third strike." This ambiguity prevented the trial court from knowing juror 2's substantive opinion of the case. *See State v. Hopkins*, 156 Wn. App. 468, 477, 232 P.3d 597 (2010).

Second, even assuming that juror 2's statements did imply that he favored acquittal, the trial court did not err in replacing juror 2. *Depaz* allows a trial court to replace a deliberating juror when "the misconduct reasonably would have altered the juror's formulated opinion." *Depaz*, 165 Wn.2d at 857. Here, to the extent we assume juror 2 favored acquittal, the juror's misconduct—namely, the extrinsic evidence he considered—clearly altered his opinion of the case. If we take the juror's statement to mean, "I don't believe Gaines is guilty because he already had two prior strike offenses," then clearly his opinion was based on the extrinsic evidence, and thus, the opinion was formulated *because* of the misconduct. Therefore, under *Depaz*, the trial court could excuse the juror because the misconduct clearly altered the juror's opinion. The trial court did not err by removing juror 2 without inquiring into his ability to be fair.

## II. PROSECUTORIAL MISCONDUCT

Gaines argues that the prosecutor committed misconduct by attributing a statement to Gaines in closing argument. We disagree.

14

No. 46352-1-II

A.      *Standard of Review*

Gaines argues the prosecutor committed misconduct; thus, he is required to show that the conduct was both improper and prejudicial.[7]  *State v. Emery*, 174 Wn. 2d 741, 756, 278 P.3d 653 (2012).  When a claim is made that the prosecutor committed misconduct during closing argument, we review the prosecutor's statements "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions."  *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

B.      *Closing Argument*

A prosecutor is allowed wide latitude in closing arguments to draw reasonable inferences from the facts in evidence and to express such inferences to the jury.  *State v. Gregory*, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R., Jr.*, 181 Wn.2d 757, 765, 336 P.3d 1134 (2014).  However, the record must support the prosecutor's statements.  *State v. Ramos*, 164 Wn. App. 327, 341, 263 P.3d 1268 (2011).  It is misconduct for a prosecutor to submit extrinsic evidence to a jury.  *State v. Vassar*, 188 Wn. App. 251, 259, 352 P.3d 856 (2015).  Extrinsic evidence is information outside what is presented at trial.  *Vassar*, 188 Wn. App. at 259.

Here, the prosecutor emphasized to the jury that many witnesses had conflicting stories. He said:

---

[7] Where, as here, the defendant did not object at trial, any alleged misconduct is waived unless the appellant shows that it was "so flagrant and ill[-]intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury."  *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).  Because we hold that the prosecutor committed no misconduct, we do not reach the issue of whether any alleged misconduct was waived.

15

> Denise Green, she says, just before the shooting, she hears Mr. Price say, you think it's cool to hit a dude in a wheelchair, and then we get to this, *bitch, get in the car, it's about to go down. That's what the defendant says*. . . . But then here's the defendant who she knows saying, bitch, get to the car. And then there's gunfire. Why is he saying that? Who drove? Not him. [Thomas] drove. *Get to the car, it's about to go down.* Get the car started, I got this, I'll be there in a second.

13 VRP (Apr. 9, 2014) at 1642 (emphasis added).

Green testified that she wasn't sure if Gaines was the one who said, "[S]omething's about to go down." 9 VRP at 1026. A prosecutor is permitted to make arguments based on reasonable inferences from the evidence. *Gregory*, 158 Wn.2d at 860. Here, the prosecutor drew on the evidence in the record to support the State's theory of the case that Gaines intentionally shot Price. Green testified that Gaines said, "[B]itch, get to the car." 9 VRP (Mar 31, 2014) at 1025. She also testified that someone instructed her to "get in the car, something's about to go down." 9 VRP (Mar 31, 2014) at 1026. Her testimony showed that she had attributed the entire statement (the instruction to get to the car, and the warning that something was "about to go down") to a single person, and she testified that Gaines said at least the first half of that sentence. The prosecutor's argument drew the inference that Gaines had, in fact, said both halves of the sentence. The prosecutor did not mislead the jury about the evidence; instead, he argued reasonable inferences based on the testimony. Thus, Gaines has failed to show that the prosecutor's statements were misconduct.

III. CONFRONTATION CLAUSE

Gaines argues that the trial court violated his right to confront witnesses by restricting his cross-examination of Thomas about the dismissal of her case and by preventing him from impeaching McVea based on a 13-year-old felony conviction. We disagree.

16

No. 46352-1-II

A.      *Standard of Review*

We review alleged confrontation clause violations de novo.  *State v. Alvarez-Abrego*, 154 Wn. App. 351, 361, 225 P.3d 396 (2010).  Where the trial court properly interprets evidentiary rules, we review a trial court's decision on the admissibility of evidence for an abuse of discretion.  *Alvarez-Abrego*, 154 Wn. App. at 362.  A trial court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds.  *Alvarez-Abrego*, 154 Wn. App. at 362.

B.      *Confrontation Clause Principles*

A person accused of a crime has a constitutional right to confront his or her accuser.  U.S. CONST. amends. VI, XIV; WASH. CONST. art. 1, § 22; *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002).  The primary and most important interest protected by the Confrontation Clause is the right to conduct a meaningful cross-examination of adverse witnesses.  *State v. Foster*, 135 Wn.2d 441, 456, 957 P.2d 712 (1998).

The right to cross-examine an adverse witness is not absolute, however.  *Darden*, 145 Wn.2d at 620.  Courts may, within their sound discretion, deny cross-examination if the evidence sought is vague, argumentative, or speculative.  *Darden*, 145 Wn.2d at 620-21.  And the ability to cross-examine is limited by general considerations of relevance.  *Darden*, 145 Wn.2d at 621; *see* ER 401, 403.  A defendant's right to introduce relevant evidence must also be balanced against the State's interest in precluding evidence so prejudicial as to disrupt the fairness of the trial.  *Darden*, 145 Wn.2d at 621.  The trial court should exclude impeachment evidence if it is only marginally relevant and its probative value is outweighed by the potential for prejudice.  *See State v. Carlson*, 61 Wn. App. 865, 875-76, 812 P.2d 536 (1991).  We presume that any error in

17

excluding admissible impeachment evidence is prejudicial and requires reversal unless we are convinced beyond a reasonable doubt that the defendant would have been convicted even if the error had not taken place. *State v. Johnson*, 90 Wn. App. 54, 69, 950 P.2d 981 (1998).

C.      *Thomas's Dismissal*

Gaines did not make an offer of proof that Thomas's statements about Gaines changed with the threat of prosecution. Instead, Gaines argued that the dismissed case against Thomas was relevant to the integrity of the State's investigation—that is, that the State initially believed Thomas was culpable, but later changed course. Believing that the details of the State's prosecution of Thomas were irrelevant, the trial court limited Gaines's cross-examination of Thomas about her case's dismissal to the following points: (1) whether she was charged with murder when she gave her statement to police, and (2) whether the murder charges were later dismissed.

The trial court did not abuse its discretion by excluding Thomas's testimony about the details of the State's case against her and its dismissal. When Gaines requested to cross-examine Thomas further than the court allowed, he focused on his desire to show that the State's investigation had lacked integrity, not that Thomas's testimony against Gaines was impacted by the dismissal. Gaines did not give an offer of proof that Thomas knew about the integrity of the State's investigation. The State argued that evidence about the State's decisions to file, and then dismiss, charges against Thomas was speculative and would confuse the jury. The trial court had tenable grounds and reasons to find that further cross-examination would be irrelevant and speculative and, therefore, inadmissible. *Darden*, 145 Wn.2d at 620-21. Thus, we hold that the

trial court did not abuse its discretion or violate Gaines's confrontation rights by limiting the scope of Thomas's cross-examination.

D.    *McVea's Felony*

ER 609(b) generally prohibits impeachment based on felonies more than 10 years old unless the court determines "that the probative value of the conviction . . . substantially outweighs its prejudicial effect." Here, McVea's felony conviction was 13 years old. The trial court did not abuse its discretion by excluding cross-examination about the conviction because Gaines did not prove that its probative value substantially outweighed its prejudicial effect.

Gaines argued that evidence of McVea's previous felony would elucidate a possible motive to flee the scene of the murder, because he risked a charge of unlawful possession of a firearm if he were possessing a firearm. This argument was highly speculative. Gaines made no offer of proof that McVea possessed a weapon or was armed with one on the night in question. The proposed cross-examination had very little probative value; it was based purely on speculation that McVea might have possessed a firearm and might have fled the scene because of it. Because the felony fell well outside the 10-year limit and because it was not substantially more probative than prejudicial, the trial court did not abuse its discretion by excluding it. Therefore, because the evidence was inadmissible, Gaines had no confrontation clause right to elicit it. *Darden*, 145 Wn.2d at 621.

## IV.  RIGHT TO PRESENT A DEFENSE

Gaines argues that the trial court violated his right to present a defense by preventing him from eliciting testimony about Green's habit for carrying a gun. The State argues that Gaines

waived this argument because he raised only a different theory of the admissibility of this evidence in the trial court. We agree with the State.

Generally, on appeal from an evidentiary decision, the appellant cannot assign error based on evidentiary theories not presented below. *See State v. Mason*, 160 Wn.2d 910, 933, 162 P.3d 396 (2007). Gaines argued below only that evidence of Green's tendency to carry a gun was admissible under ER 404(b) to prove her opportunity to be the shooter on the night in question. Accordingly, the trial court denied his motion to present this evidence, ruling that it was "pure propensity evidence" and inadmissible under ER 404(b). VRP (Oct. 10, 2013) at 902. Gaines did not argue that the evidence was admissible as habit evidence under ER 406—but that is his sole argument on appeal for why the evidence was admissible. The trial court made no ruling on the admissibility of the evidence under ER 406 because Gaines did not argue that theory. We hold that this argument is not preserved.

V. MOTION TO DISMISS FOR MISCONDUCT

Gaines argues that the trial court erred by denying his motion to dismiss his case with prejudice due to governmental misconduct. We disagree.

A.      *Standard of Review*

CrR 8.3(b) governs a trial court's dismissal of criminal charges due to governmental misconduct. That rule provides:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

Under CrR 8.3(b), a trial court may dismiss a defendant's charges if the defendant makes two showings. First, the defendant must show arbitrary action or governmental misconduct. *State v.*

*Michielli*, 132 Wn.2d 229, 239, 937 P.2d 587 (1997). Such governmental misconduct "need not be of an evil or dishonest nature," rather, "simple mismanagement is sufficient." *State v. Dailey*, 93 Wn.2d 454, 457, 610 P.2d 357 (1980).

Second, a defendant seeking dismissal under CrR 8.3(b) must also show by a preponderance of the evidence that such governmental misconduct prejudiced his or her right to a fair trial. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003); *Michielli*, 132 Wn.2d at 240. Prevailing on a motion under CrR 8.3(b) requires a showing of actual prejudice; the mere possibility or speculation of prejudice will not suffice. *Rohrich*, 149 Wn.2d at 657-58. "[I]n order to show prejudice justifying dismissal, the defendant must establish 'by a preponderance of the evidence that interjection of new facts into the case when the State has not acted with due diligence will compel him to choose'" between the right to a speedy trial or effective assistance of counsel. *State v. Cannon*, 130 Wn.2d 313, 328-29, 922 P.2d 1293 (1996) (quoting *State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980)).

Dismissal under CrR 8.3 is an extraordinary remedy and, thus, a trial court should consider alternative remedies before resorting to dismissal. *State v. Wilson*, 149 Wn.2d 1, 12, 65 P.3d 657 (2003). Dismissal is limited to those "'truly egregious cases of mismanagement or misconduct.'" *Wilson*, 149 Wn.2d at 9 (quoting *State v. Duggins*, 68 Wn. App. 396, 401, 844 P.2d 441 (1993)). We review the denial of a motion made under CrR 8.3 for abuse of discretion and overturn the decision only if the trial court's decision was manifestly unreasonable or based on untenable grounds. *Wilson*, 149 Wn.2d at 9.

B.       *No Proof of Prejudice*

Gaines argues that the government's mismanagement of Thomas's case, which led to a mistrial in his case, prejudiced him because it impacted his rights to a speedy trial, forced him to choose between adequately prepared counsel and a speedy trial, and impacted his double jeopardy rights.[8]  We disagree.

When Gaines moved to dismiss his case with prejudice under CrR 8.3, he never specified what new facts the State had interjected into the case that prejudiced him.  Gaines argued that proceeding with trial would force him to choose between his speedy trial rights and adequately prepared counsel, but he never specified what facts in the proffer statement were new to him.  Nor did he provide support for the assertion that the proffer must have included new facts because it induced the State to dismiss Thomas's case.  The trial court noted its willingness to provide him with more time to prepare, and then granted his motion for a mistrial.

Here, the trial court did not abuse its discretion in finding that Gaines's right to a fair trial would not be prejudiced without a dismissal.  Gaines bore the burden of proving by a preponderance of the evidence that new facts compelled him to choose between his rights to a speedy trial and effective assistance of counsel.  *Cannon*, 130 Wn.2d at 328-29.  But Gaines never identified any new facts; he merely argued in a conclusory fashion that there were many

---

[8] Gaines also appears to argue that the trial court should have found not only that the detective mismanaged the case by delaying her report of the interview, but also that the prosecutor mismanaged the case by proceeding with the charges against Thomas with insufficient evidence. We decline to review this argument, raised for the first time on appeal.  Below, Gaines specified that he believed the prosecutor to be blameless.

The trial court found that there was governmental mismanagement by the detective.  We accept that finding, and proceed to inquire whether the trial court abused its discretion by finding that prejudice to Gaines did not require dismissal.

new facts or speculated that new facts must exist to explain the State's dismissal. In fact, aside from Thomas's nodding, the only new fact appeared to be Thomas's admission that she came to the party with Gaines and left with him. Gaines was already aware of this inconsequential fact from Green's statements. Thus, Gaines did not prove that new facts compelled him to choose between his speedy trial right and the right to effective assistance of counsel. In other words, he did not prove actual prejudice. The trial court did not abuse its discretion by not resorting to the last resort of dismissal. *Wilson*, 149 Wn.2d at 12. Instead, it offered Gaines's counsel more time to prepare, and it granted his request for a mistrial. Gaines's argument fails.

## VI. LEGAL FINANCIAL OBLIGATIONS

Gaines argues that the trial court erred by ordering him to pay LFOs without inquiring into his ability to pay. Gaines concedes that he did not object to this finding at sentencing, but he argues that he may raise it for the first time on appeal under *State v. Blazina*, 182 Wn.2d 827, 834, 344 P.3d 680 (2015). We use our discretion to reach the merits of this argument. We agree with Gaines, and we remand for the trial court to consider Gaines's ability to pay discretionary LFOs.

RCW 10.01.160(3) provides that the trial court (1) "shall not order a defendant to pay costs unless the defendant is or will be able to pay them," and (2) shall take account of the defendant's financial resources and the nature of the burden that payment of costs will impose in determining the amount and method of payment of costs. "The trial court must decide to impose LFOs and must consider the defendant's current or future ability to pay those [discretionary] LFOs based on the particular facts of the defendant's case." *Blazina*, 182 Wn.2d at 834.

We agree with Gaines that the trial court erred. The trial court imposed $1,500 in discretionary court-appointed attorney fees. There was no discussion of Gaines's ability to pay these fees on the record. Accordingly, we remand to the sentencing court for an inquiry into Gaines's ability to pay his discretionary LFOs. *Blazina*, 182 Wn.2d at 834.

## VII. APPELLATE COSTS

Gaines filed a supplemental brief opposing appellate costs in light of *State v. Sinclair*, 192 Wn. App. 380, 393, 367 P.3d 612 (2016), arguing that he does not have the ability to pay. In light of Gaines's indigent status, and our presumption under RAP 15.2(f) that he remains indigent "throughout the review" unless the trial court finds that his financial condition has improved, we exercise our discretion to waive appellate costs. RCW 10.73.160(1).

In conclusion, we affirm Gaines's convictions. We remand to the trial court for consideration of his ability to pay discretionary LFOs. We exercise our discretion to waive appellate costs.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Melnick, J.